v.

**The Commonwealth of PUERTO RICO, et al., Defendants.**

**Civil No. 99–1435 (GAG).**

United States District Court, D. Puerto Rico.

Signed June 17, 2014.

Guillermo A. Gil–Bonar, United States Attorney's Office, San Juan, PR, Richard J. Farano, Senior Trial Attorney, Washington, DC, for Plaintiff.

Anabelle Rodriguez–Rodriguez, Carlos Del–Valle–Cruz, Esther Crespin–Credi, Department of Justice, Leila S. Castro–Moya, San Juan, PR, Barron L. Stroud, Washington, DC, for Defendants.

### *OPINION AND ORDER*

GUSTAVO A. GELPÍ, District Judge.

The Commonwealth of Puerto Rico and its Department of Health (collectively, "the Commonwealth") have asked the court via motion (Docket No. 1506) to reconsider its denial of their request that it issue an order requiring the independent court monitor in this case, Dr. Sylvia Fernández–Colorado, to enter into a professional services contract with the Commonwealth. The court hereby **DENIES** said motion,

and hence, reaffirms its earlier ruling at Docket Nos. 1495 & 1503.

This case dates back to 1999 when the United States of America, through its Department of Justice, Civil Rights Division, filed suit against the Commonwealth to vindicate the constitutional and statutory rights of United States citizens with developmental disabilities, such as Autism, Down's Syndrome and mental retardation. Historically, this vulnerable population with special needs has been deprived of the right to receive adequate and appropriate services and supports in the most integral community setting. *See, e.g.,* Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 (Part A), and the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997; *Olmstead v. L.C.,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

Since July 20, 2000, the undersigned and his two esteemed predecessors, Judge Juan M. Pérez–Giménez and Judge Jay García–Gregory have repeatedly endorsed settlement orders and judgments establishing that the monitor herein, known as the Joint Compliance Coordinator ("JCC") is an independent monitoring judicial official, and not a mere consultant for any of the parties. *See eg.,* Interim Settlement Agreement of April 30, 1999, (Docket No. 2); Supplemental Interim Settlement Agreement of April 14, 2000 (Docket No. 15); and Joint Compliance Action Plan of October 6, 2011 (Docket No. 1181).

Fourteen years after the outset of this federal case, and five local administrations later, the Commonwealth justifies the need for a contract based on House Bill No. 1922 of April 30, 2014 known as "the Law of Fiscal Sustainability of the Commonwealth of Puerto Rico", which if enacted would establish constraints regarding the use of public monies.[1] Because the monitor and his staff are compensated from public funds deposited with the Clerk of the Court, and these funds are approved by the local legislature, the Commonwealth posits that without such contract it would unlawfully be disbursing public funds. Likewise, it alludes to the Puerto Rico Government Accounting Act of 1974, P.R. Laws Ann. tit. 3 § 283, which requires all government obligations that require payments within a fiscal year to be recorded in contract form.

The preceding arguments do not prevail. The court in this case retains jurisdiction to enforce the parties' settlement agreement, which is akin to a consent decree. In order to effectively do so, the court has the authority to order any remedy that vindicates federal rights, more so as here in the context of an extended structured reform. Thus, otherwise valid Commonwealth laws cannot stand in the way of a federal court's remedial scheme insofar as enforcement thereof is concerned. *See Hook v. Arizona Dept. of Corr.,* 107 F.3d 1397, 1402–03 (9th Cir.1997).

At present, significant remedial issues remain unresolved in this case, and require independent court monitoring. For example, placement in adequate community homes, employment and health services are a few such areas. The JCC has always been the eyes and ears of this court. Forcing the JCC to sign a contract with the Commonwealth would thus frustrate this officer's *raison d'etre.*

Currently, the JCC responds only to the court and is a deputized federal officer. All JCC expenses are managed, scrutinized and ultimately approved by the court

---

1. As of the time of issuance of this order, both the Commonwealth's House and Senate had approved the measure.

and form part of the public record. This process safeguards both fiduciary and ethical principles. Forcing a federal court monitor to sign a contract with the Commonwealth would frustrate the court's long-standing interest of an independent judicial officer. The JCC, in turn, would readily be accountable to the Commonwealth's legislative branch, as well as the Government Ethics and Comptroller's offices. Any validly federal court-authorized action could result in a local legislative or executive investigation. More so, with every change in administration, the new incumbent officials could also freeze, rescind, modify or decide not to renew the JCC's contract, treating the same as any other professional services agreement. This all runs counter to the court's unflagging obligation to enforce the Nation's Constitution and laws.

Finally, throughout the past year, the JCC has faced countless obstacles from the Health Department in obtaining documents and information. Hence, even more the greater need for an independent monitoring judicial officer.

**SO ORDERED.**